No. 98-277

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 239

LISA B. KAUFFMAN, Esq.,

Relator,

v.

MONTANA TWENTY-FIRST JUDICIAL DISTRICT

COURT, RAVALLI COUNTY, THE HONORABLE

JEFFREY LANGTON, Presiding Judge,

Respondent.

No

ORIGINAL PROCEEDING

COUNSEL OF RECORD:

For Relator:

Lisa B. Kauffman, Attorney at Law, Missoula, Montana

For Respondent:

The Honorable Jeffrey Langton, District Court Judge,

Hamilton, Montana

Submitted: June 16, 1998

No

Decided: September 29, 1998

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

¶ **On April 15, 1998, District Court Judge Jeffery H. Langton of the Twenty-First Judicial District in Ravalli County, found petitioner, Lisa B. Kauffman, Esq., in contempt of court. Judge Langton ordered Kauffman to serve twenty-four hours in the Ravalli County Jail and fined her the sum of $500.**

¶ **Kauffman immediately filed a petition for writ of certiorari with this Court, and on April 16, 1998, we stayed the execution of the contempt order and set forth a briefing schedule. After briefs were submitted, on May 14, 1998, this Court dismissed the petition on procedural grounds without prejudice. Kauffman then refiled her petition and, after another procedural challenge by Judge Langton, we decided to address the petition on the merits.**

¶ **We now consider Kauffman's application for writ of certiorari and, at the request of Judge Langton, consider his response filed in Case No. 98-200 as his response in this action. We grant the petition for a writ of certiorari and reverse.**

¶ **The issues on appeal are:**

¶ **1. Did the District Court have jurisdiction to issue the contempt order?**

¶ **2. Is there substantial evidence to support the contempt order?**

¶ **Because our resolution of Issue One is dispositive, we decline to address Issue Two.**

No

## FACTUAL BACKGROUND

¶ In October 1997, Lisa B. Kauffman, Esq., applied for a scholarship to attend a legal seminar to be held in Puerto Rico commencing on February 4, 1998. The next month, on November 14, 1997, Judge Langton appointed Kauffman to represent a mother in a proceeding to terminate the mother's parental rights. Shortly thereafter Judge Langton set the matter for hearing on February 9 and 10, 1998.

¶ Kauffman made contact with the father's counsel in December 1997, seeking information about the whereabouts of the mother. Kauffman then left for a three-week vacation to Chicago, returning on January 6, 1998. Upon her return, she learned that she had been granted the scholarship for the seminar in Puerto Rico. Kauffman then focused on a criminal jury trial scheduled for January 12, 1998.

¶ Upon completion of the jury trial, Kauffman began to address her obligations in the court appointment. On January 27, 1998, Kauffman spoke with attorney Michael Hayes who was representing the State in the termination proceeding. He gave Kauffman information he had regarding the mother at that time. Also on January 27, 1998, Kauffman called Bobbi Baker, the social worker involved, and Patricia Sanders, the guardian ad litem. Baker provided the information she had regarding the mother and, later that day, contacted Kauffman and gave her the mother's new telephone number.

¶ Kauffman's initial contact with her client occurred on January 29, 1998. Also on that date Kauffman filed a motion to continue. The motion recited that up until that date Kauffman had attempted, without success, to locate her client. The District Court denied the motion.

¶ Kauffman next contacted attorney Kirk Krutilla to substitute for her so she could attend the Puerto Rico conference. Krutilla obtained Kauffman's file on the matter on February 2, 1998. Kauffman departed for Puerto Rico on February 2, 1998, without notice to the court or formally seeking a substitution of counsel. The termination proceeding commenced as scheduled on February 9, 1998, with Krutilla representing the mother.

¶ Apparently disturbed by Kauffman's actions in connection with the proceeding, on March 27, 1998, by certified letter, Judge Langton directed Kauffman to appear pursuant to a contempt citation for hearing. Judge Langton also directed other parties to the proceeding to file affidavits concerning Kauffman's representation of the mother.

¶ Judge Langton held a contempt hearing and determined that Kauffman's version of the events conflicted with that of other witnesses who provided testimony. Specifically, Judge Langton found that Kauffman's testimony that she had advised the mother about the substitution of counsel on January 29, 1998, and that she had already contacted Krutilla about taking over the case, conflicted with Krutilla's billing statement and testimony at the hearing. Judge Langton further noted that Kauffman's testimony conflicted with documents which she filed regarding the dates when she received a contact number for her client, when she first spoke with her client, and when she filed her motion to continue. Judge Langton also noted that a significant time elapsed between the date she affirmatively knew of her scheduling conflict and the date she filed her motion to continue.

¶ Judge Langton found that Kauffman's actions were in direct violation of his order in which he appointed her to represent the mother in the termination proceedings. Judge Langton further found that Kauffman failed to display reasonable diligence and promptness in her representation of her client in violation of Rules 1.3 and 3.2 of the Rules of Professional Conduct, and made misleading statements to the District Court in violation of Rule 3.3. Finally, Judge Langton found that Kauffman engaged in conduct prejudicial to the administration of justice in violation of Rule 8.4(c) and (d). As a result of these infractions, Judge Langton determined that Kauffman was in direct contempt of court as provided by § 3-1-501, MCA.

## DISCUSSION

¶ Our established standard for review of contempt orders, pursuant to a writ of certiorari, is first to determine whether the court which found contempt acted within its jurisdiction and, second, to determine whether there is evidence to support the finding of contempt. *See Matter of Graveley* (1980), 188 Mont. 546, 555, 614 P.2d 1033, 1038-39.

¶ Kauffman first argues that Judge Langton did not have jurisdiction to issue the

contempt order. Kauffman correctly points out that if the court's purpose is to punish the contemnor for a specific act done and to vindicate the authority of the court, the contempt is criminal. *See Gompers v. Buck's Stove & Range Co.* (1911), 221 U.S. 418, 441, 31 S. Ct. 492, 498, 55 L. Ed. 797, 806. This is in contrast to a sanction which attempts to force the violator's compliance with a court order, which is civil contempt. It is the ability to end the imprisonment that is the distinguishing factor and why it is often said that in a civil contempt case one carries the keys to the jailhouse in his own pocket. *See Gompers,* 221 U.S. at 442, 31 S. Ct. at 498, 55 L. Ed. at 806. Kauffman maintains that since her conduct can only be characterized as criminal contempt, Judge Langton was without jurisdiction to sanction her to jail without being prosecuted under Montana's criminal contempt statute, § 45-7-309, MCA.

¶ Judge Langton responds that he was within his jurisdiction to issue the order without proceeding under the criminal contempt statute. He points out that summary punishment of direct contempt is a traditional and essential power of the court and is provided for by statute. Sections 3-1-511 and -519, MCA. Judge Langton provided Kauffman an opportunity for allocution which is required in direct contempt proceedings. *See Malee v. District Court* (1996), 275 Mont. 72, 911 P.2d 831.

¶ Kauffman raises another jurisdictional argument. She contends that Judge Langton was without jurisdiction to preside over charges which can only be described as indirect contempt. Direct contempt is an open insult committed in the presence of the court, whereas an indirect contempt is an act done not in the presence of the court, but at a distance that tends to belittle or degrade the court. *See Malee,* 275 Mont. at 75-76, 911 P.2d at 832-33. The distinction is critical to a determination of the proper procedures which the court must follow.

¶ Kauffman argues that her conduct, which Judge Langton deemed to be contemptuous, was indirect or constructive. She argues that because she never appeared before Judge Langton until her order to show cause hearing, the matter is an indirect or constructive contempt. Kauffman further argues that for indirect contempt, the proper procedures which must be followed are spelled out in § 3-1-512, MCA, and that Judge Langton acted without authority when he required her to appear before him by certified letter. Therefore, she urges that the matter be dismissed for lack of jurisdiction.

¶ Judge Langton states that the contempt in this particular case was direct. Section 3-1-511, MCA. According to Judge Langton, the direct contempt included oral statements made to the court, and written documents filed with the court, both of which the Judge personally observed. He argues his authority for the direct contempt is found in § 3-1-501(c), (d), and (e), MCA. He states that as District Judge he may summarily punish for direct contempt and, in this case, he was within his jurisdiction to do so.

¶ Finally, Kauffman argues that should we address the merits of the contempt order, there was insufficient evidence to support it. Kauffman maintains that under § 3-1-501, MCA, Judge Langton apparently proceeded under subsection (c) or (e). She argues that there was a one-sentence minute entry which appointed her to represent her client in this case, and there were no orders compelling her personal appearance at any hearings. She further asserts that she secured alternative counsel for her appointed client in the event that her motion to continue was denied. She also points out that under § 37-61-403, MCA, an attorney in an action may be changed at any time by filing a substitution with the client's consent in the minutes with the clerk. She notes that her client had no objection to the substitution.

¶ Judge Langton responds that Kauffman's affidavit filed on February 9, 1998, is irreconcilable in several regards to other statements made by Kauffman, including information she provided in her statement of fees, letters to the District Court, and her motion for continuance. He argues that this is further exacerbated by her oral testimony given at the contempt hearing. Judge Langton points out that her affidavit represents that she had diligently tried to locate the client; however, at the hearing it was established, through the witnesses and her own testimony, that she did not attempt to locate her client until two weeks before the scheduled hearing. In summary, Judge Langton argues that this was clearly direct contempt and that he sentenced her within his jurisdiction and authority as allowed by the statutes.

¶ We conclude that Kauffman's conduct may have satisfied the elements of § 3-1-501, MCA, and, therefore, that it is within Judge Langton's jurisdiction, pursuant to § 3-1-519, MCA, to issue the contempt order in question. However, as we more fully explain below, certain contempt proceedings pursuant to § 3-1-501, MCA, must provide for more due process protection for the contemnor than is provided in a summary contempt proceeding.

**Summary contempt proceedings must only be used in instances in which the contemptuous conduct requires immediate action in order to vindicate the authority of the court.**

**¶ As we stated above, the distinction between direct and constructive contempt is critical when determining the due process afforded to the contemnor. Actually, the alleged conduct in question in this proceeding is probably best described as a mixture of both direct and indirect. However, Judge Langton was certainly justified, based on our case law, to characterize the alleged conduct in this instance as direct contempt. Direct contempt includes acts or statements made in open court or within the purview of the presiding judge.** *See Malee,* **275 Mont. at 76, 911 P.2d at 834. We have previously expanded the definition of direct contempt to include the filing of pleadings placed before the court.** *See Malee,* **275 Mont. at 76, 911 P.2d at 834. In the case before him, Judge Langton based his contempt order on written documents placed with the court, as well as oral testimony at the contempt hearing.**

**¶ Regardless of how we classify the conduct at issue, this Court has always been vigilant to insure that due process is properly accorded to the person charged. We have held that in constructive or indirect contempt proceedings, the following due process requirements must be followed:**

That one charged with contempt of court be advised of the charges against him, have reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation.

*Malee*, 275 Mont. at 76, 911 P.2d at 833 (citing *In re Oliver* (1948), 333 U.S. 257, 275, 68 S. Ct. 499, 508, 92 L. Ed. 682, 695). Additionally, we have held that a court must follow the affidavit or statement of facts procedure set forth in § 3-1-512, MCA.

**¶ In cases of direct contempt, on the other hand, we have not afforded full due process. We have held that although a contemnor is not entitled to the full due process of notice of charges, opportunity to be heard, and an opportunity to present**

his or her case in front of an unbiased tribunal, he or she is entitled to a right of allocution or an opportunity to be heard. *See Malee,* 275 Mont. at 76, 911 P.2d at 833. Pursuant to § 3-1-511, MCA, direct contempt may be summarily punished; however, according to our reasoning in *Malee*, in all summary contempt proceedings "the contemnor must be granted an opportunity to explain or excuse himself. Such opportunity allows the individual to potentially purge himself or show no contempt was intended." *Malee,* 275 Mont. at 78, 911 P.2d at 834 (citing *State ex rel. Smith v. District Court* (1984), 210 Mont. 344, 347, 677 P.2d 589, 591). Therefore, we held that in summary contempt proceedings the contemnor does not have a right to a "full-blown" trial of his or her contempt charges, but does have a right to notice and at least a brief opportunity to defend or explain his or her actions. *Malee,* 275 Mont. at 78-80, 911 P.2d at 835. This we have described as a right of allocution. *See Malee,* 275 Mont. at 78-79, 911 P.2d at 835.

¶ Because this Court has expanded the definition of direct contempt from being only that misconduct which occurs in open court, to language found in pleadings, we have created a category of direct contempt that does not necessarily require urgent and immediate action in order to preserve and restore order, dignity, and the authority of the court. *See Malee,* 275 Mont. 72, 911 P.2d 831. Urgency considerations generally do not exist in this species of direct contempt. The need to sacrifice due process concerns for the practical need to maintain an orderly court is not present. Therefore, although we affirm this expansion of our definition of direct contempt, we believe it is necessary to clarify the situations in which direct contempt may give rise to summary contempt proceedings, and the situations in which direct contempt must be addressed by proceedings that respect the full due process rights of the accused.

¶ In *Pounders v. Watson* (1997), 117 S. Ct. 2359, 2361, 138 L. Ed. 2d 976, 982, the United States Supreme Court addressed the summary contempt exception to the normal due process requirements of a hearing, counsel, and the opportunity to call witnesses. It pointed out that summary contempt "includes only charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential to prevent 'demoralization of the court's authority' before the public." *Pounders,* 117 S. Ct. at 2361, 138 L. Ed. 2d at 982 (quoting *In re Oliver* (1948), 333 U.S. 257, 275, 68 S. Ct. 499, 509, 92 L. Ed. 682, 695) (emphasis added). The Supreme Court has stressed the importance of confining summary contempt orders to only that

**misconduct which requires immediate action to protect the judicial institution itself.** *See Harris v. United States* **(1965), 382 U.S. 162, 167, 86 S. Ct. 352, 356, 15 L. Ed. 2d 240, 243-44. This usually occurs in proceedings in the courtroom during which the "affront to the court's dignity is more widely observed, justifying summary vindication."** *Pounders***, 117 S. Ct. at 2362, 138 L. Ed. 2d at 982. A limitation of summary contempt proceedings to instances in which the misconduct threatens the court's immediate ability to conduct its proceedings is in line with the policy consideration that contempt power is subject to abuse, and "only 'the least possible power adequate to the end proposed' should be used in contempt cases."** *Young v. United States ex rel. Vuitton et Fils S.A.* **(1987), 481 U.S. 787, 801, 107 S. Ct. 2124, 2134, 95 L. Ed. 2d 740, 754.**

**¶ The importance of the due process limitation on the authority of a court to issue a summary contempt order was aptly recognized by Justice Frankfurter in his dissenting opinion in** *Sacher v. United States* **(1952), 343 U.S. 1, 72 S. Ct. 451, 96 L. Ed. 717:**

Summary punishment of contempt is concededly an exception to the requirements of Due Process. Necessity dictates the departure. Necessity must bound its limits. In this case the course of events to the very end of the trial shows that summary measures were not necessary to enable the trial to go on. Departure from established judicial practice, which makes it unfitting for a judge who is personally involved to sit in his own case, was therefore unwarranted. . . .

This, then, was not a situation in which, even though a judge was personally involved as the target of the contemptuous conduct, peremptory action against contemnor was necessary to maintain order and to salvage the proceedings. Where such action is necessary for the decorous continuance of a pending trial, disposition by another judge of a charge of contempt is impracticable. Interruption for a hearing before a separate judge would disrupt the trial and thus achieve the illicit purpose of a contemnor.

*Sacher,* 343 U.S. at 36-37, 39, 72 S. Ct. at 468, 469-470, 96 L. Ed. at 737 (Frankfurter, J. , dissenting). We recognized these limits to a court's summary contempt power in *Lilenthal v. District Court* (1982), 200 Mont. 236, 650 P.2d 779, in which we held:

Unless the act constituting contempt occurs in open court where <u>immediate punishment is necessary to prevent demoralization of the court's authority</u>, due process requires:

". . . that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation." *In Re Green* (1962), 359 [369] U.S. 689, 691-92, 82 S.Ct. 1114, 1116, 8 L.Ed.2d 198, 200; *Re Oliver* (1948), 333 U.S. 257, 275, 68 S.Ct. 499, 508, 92 L.Ed. 682, 695.

*Lilenthal,* 200 Mont. at 242, 650 P.2d at 782 (emphasis added).

¶ **With these considerations in mind, we conclude that regardless of the type of contempt committed, direct or indirect, a court's primary consideration before subjecting a contemnor to summary contempt proceedings, must be whether immediate corrective steps are necessary to restore order, maintain dignity and authority of the court, and to prevent delay. Otherwise, a contemnor is entitled to the full due process hearing traditionally associated with indirect contempt, a finding, in instances in which criminal punishment is a consequence, that the evidence establishes the contemnor's guilt beyond a reasonable doubt, and a hearing in front of an unbiased court other than that in which the misconduct occurred. *See In re Murchison* (1955), 349 U.S. 133, 136-39, 755 S. Ct. 623, 625-27, 99 L. Ed. 942, 946-48; *State ex rel. Tague v. District Court et al.* (1935), 100 Mont. 383, 388, 47 P.2d 649, 651.**

¶ **Accordingly, we conclude that a district court may subject a contemnor to summary contempt proceedings in those circumstances in which the misconduct threatens the court's immediate ability to conduct its proceedings and instant action**

is necessary. We further recognize that the trial judge must and does have the inherent authority and power to address and summarily punish such conduct. Certainly our decision in this case should not be viewed to diminish this traditional authority. Pursuant to our decision in *Malee*, the contemnor in a summary contempt proceeding maintains his or her right of allocution.

¶ In cases in which it is not necessary for a court to take instant action, however, a contemnor is entitled to full due process. This includes a hearing before a neutral judge, during which the contemnor is advised of the charges against him or her, has a reasonable opportunity to meet them by way of defense or explanation, has the right to be represented by counsel, has a chance to testify and call other witnesses on his behalf, and, in instances in which criminal punishment is a consequence, a finding of guilt beyond a reasonable doubt.

¶ The facts of this case bring the immediacy requirement of summary contempt into clear focus. Here the underlying hearing at which Kauffman failed to appear had already transpired with substitute counsel. Likewise, the District Court did not determine that Kauffman had filed the alleged misleading documents until after the hearing. That being the case, there was no urgency or immediacy to the question of whether Kauffman's conduct was contemptuous. The matter could be handled, as it was, in a subsequent and separate hearing involving the issue of contempt.

¶ We conclude that because Kauffman's conduct in this case allegedly constitutes contempt that did not necessitate immediate action, a summary contempt proceeding by the same judge was not necessary and violated Kauffman's due process rights. We remand this case for a hearing in front of a different judge in a manner consistent with this opinion.

¶ The judgment of the District Court is reversed.

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ TERRY N. TRIEWEILER

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART