No. 04-254

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 154

ROBERTA DREW,

       Petitioner,

   v.

MONTANA TENTH JUDICIAL DISTRICT COURT,
JUDITH BASIN COUNTY, THE HONORABLE
LOREN TUCKER, PRESIDING JUDGE,

       Respondents.

**ORIGINAL PROCEEDING**:     Writ of Supervisory Control

COUNSEL OF RECORD:

       For Appellant:

              Robert L. Stephens, Attorney at Law, Billings, Montana

       For Respondents:

              Honorable Mike McGrath, Montana Attorney General, Jennifer Anders, Assistant Attorney General, Helena, Montana

       For Amicus:

              Michael Donahoe, Montana Association of Criminal Defense Lawyers, Helena, Montana

Submitted:  April 15, 2004

Decided:  June 21, 2004

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Roberta Drew (Drew) challenges, by way of Petition for Writ of Certiorari, the Order of the Montana Tenth Judicial District Court, the Honorable Loren Tucker presiding, finding her in contempt of court and imposing sanctions including the service of jail time.  Drew's Writ is denied.

## ISSUE

¶2     The only issue in this case is whether the amendment to § 3-1-518, MCA (2001), which permits a judge to punish a contempt arising from violations of an order issued by that judge after a hearing on the merits of the order, offend due process in contravention of our Opinion in *Kauffman v. 21st Judicial Dist. Court*, 1998 MT 239, 291 Mont. 122, 966 P.2d 715.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     The contempt proceedings before us arose out of the case of *State of Montana v. Donna June Enright*, DC 96-3003, pending in the Montana Tenth Judicial District Court, Judith Basin County.  Drew was appointed to represent Enright on or around May 1, 2003, for the purposes of filing an amended petition for post-conviction relief.  On June 16, 2003, the District Court ordered Drew to file and serve the amended petition for post-conviction relief on or before July 18, 2003.  On July 11, 2003, Drew moved for an extension of time, which the court granted through August 29, 2003.  Subsequently, on September 2, 2003, Drew again moved for an extension of time to file the amended petition, and the court again granted her motion, extending its deadline until October 3, 2003.  No amended petition was

2

filed by the deadline, nor did Drew offer any explanation for failing to file the petition.

¶4 On November 26, 2003, the Honorable Loren Tucker received from Enright directly a *pro se* petition for writ of mandate. Enright requested assistance from the court to proceed with her petition for post-conviction relief in light of the failure of her attorney to take any action on her behalf. Following receipt of this *pro se* petition, and having heard no explanation from Drew for her failure to file the amended petition for post-conviction relief on Enright's behalf, the District Court issued its first Order to Show Cause on December 4, 2003. The court ordered Drew to appear before it in Dillon, Montana, on January 13, 2004, either in person or by video conference, to show cause why she had not filed the amended petition for post-conviction relief on behalf of her client. On January 13, 2004, the date scheduled for the hearing, Drew filed a written motion to continue the hearing, representing that she had been preoccupied with family emergencies including the death of her mother in October 2003, and the repeated hospitalizations of her husband since August 2003. Accordingly, Drew did not appear in court on January 13, 2004.

¶5 On January 15, 2004, the District Court entered its Second Order to Show Cause. In this Order, the court extended its sympathy to Drew, but noted that seven and one-half months and four continuances had passed with nothing at all tangible having been produced by Drew on behalf of Enright. The court therefore directed Drew to appear on February 5, 2004, at the courthouse in Dillon, Montana, to show cause why she had not filed the amended petition for post-conviction relief, to provide corroboration from credible sources of the assertions of the family hardships she has encountered, and to provide to the court a

3

realistic written schedule including deadlines for action to be taken on Enright's behalf. The court also directed Drew to show cause why she should not be sanctioned for delay and inattention to her client's concerns and for her failure to comply with two previous court orders, and to show cause why her conduct should not be reported to appropriate agencies.

¶6 On February 5, 2003, Drew appeared in court with counsel in response to the Second Order to Show Cause. During the hearing, Drew explained in detail the family and health issues she had been undergoing, and also described her personal bouts with depression and anxiety. Drew represented that as a consequence of these problems, she had not been able to accomplish the task assigned to her. During that hearing, the transcript of which is 31 pages in length, the court questioned Drew about her personal problems, her caseload, and the work that she had done and anticipated completing on Enright's behalf. The court extended its sympathies to her for her problems but advised Drew candidly that she had lost credibility with the court for her failure to previously advise the court of her personal problems when seeking earlier continuances, and because the court was frustrated by the fact that Drew had consistently failed to take action on behalf of her client until she was ordered to show cause why she should not be held in contempt. Ultimately, Drew apologized to the court for her failings, and represented to the court that based upon her review of the file and discussions with the Appellate Defender's Office, it was her intention to file a motion to withdraw together with accompanying *Anders* brief on or before February 13, 2004. The court then advised Drew that she would not be thrown in jail and would not be fined,

premised upon her representation that she would be filing these substantive pleadings by February 13, 2004. The court said that upon receipt of these documents, it would consider the difficulty of the situation and that fact that Drew had to travel to the show cause hearing, as sufficient sanction.

¶7 No documents were filed by Drew by February 13, 2004. On February 19, 2004, Judge Tucker telephoned Drew. Unable to reach her, he left a telephone message directing Drew to act immediately to demonstrate why she ought not be severely sanctioned, including jail time. Drew neither returned the court's call or filed any further documents. Accordingly, on March 4, 2004, the District Court issued a third Order to Show Cause, requiring Drew to personally appear before the court on March 25, 2004, to show cause why she should not be sanctioned by fine or jail or both for her failure to act on behalf of her client, for her misrepresentation to and deception of the court, and for her failure to comply with the court's order to file the appropriate pleadings by February 13, 2004.

¶8 Drew appeared in person and with counsel, Kris Copenhaver-Landon, at the hearing of March 25, 2004. Prior to the commencement of the hearing, Drew filed a Motion to Withdraw as Counsel of Record for Enright. At the hearing, Counsel Copenhaver-Landon represented that Drew understood the charges with which she was faced, and stated that if the court was anticipating a criminal contempt situation, then Drew would ask for a neutral magistrate. Otherwise, they were prepared to go forward. In response, the court indicated it was not going to conduct a summary proceeding, but would proceed instead under § 3-1-518, MCA, which allows a party to appear with counsel and give evidence. The court

5

pointed out that under § 3-1-518(1), MCA, the judge who issues an order that is disobeyed may proceed with a hearing on the merits of the subject order and then punish the contempt "unless it is shown that the judge would not be impartial in addressing the contempt." The court then gave Drew the opportunity to present any evidence she might have to demonstrate that it could not be impartial. No such evidence was offered at that point. Counsel then inquired whether the court would accept notes from various Billings physicians relative to Drew's medical condition. The court refused to accept the notes on the basis of their hearsay status, and declined to grant a continuance to allow the physicians to be subpoenaed because of the lengthy delay Drew's client had already suffered.

¶9      Following an opening statement by her attorney, Drew was sworn and testified. Although the court had denied the admission of a medical record of her kidney infection, the court allowed Drew to refer to the report to document the dates and times when the illness had afflicted her. Drew attempted to explain why her ailments and the ailments of family members had prevented her from acting on behalf of Enright. She also advised the court that she had just filed her motion to withdraw as counsel for Enright together with supporting brief. The court reviewed the motion in Drew's presence and expressed dissatisfaction with its content and with her representations that she had performed services for her client. The court then advised Drew that she had no credibility with the court.

¶10     At this juncture, counsel for Drew renewed her request for a neutral magistrate, contending that based upon the court's comments, the matter should not be heard in front of Judge Tucker. The motion was denied. Judge Tucker explained that it was his day-to-day

6

duty to assess credibility, and that a finding that a person lacks credibility is not an indication of impartiality or lack of neutrality. Following this exchange, counsel represented that Drew had filed with the court the appropriate documents in response to the rule to show cause, and therefore submitted that she had purged herself of contempt. The court asked counsel if she had submitted everything she would like to submit on behalf of Drew and counsel answered in the affirmative.

¶11 The court then gave a detailed explanation of the reasons it found Drew lacking in credibility and concluded beyond a reasonable doubt that Drew's explanations were without justification or plausibility. Drew's counsel then attempted to explain why Drew failed not only to file the promised pleadings on February 13, 2004, but failed to respond to the court's telephone call or take any further action until March 25, 2004.

¶12 The court stated for the record its dissatisfaction with the motion to withdraw, finding it was not the *Anders* brief which Drew represented she would file and concluding that the short petition contained no analysis. The court then found that Drew had failed to comply with the court order and that her explanations for failure to do so were not persuasive. The court further found that Drew's efforts to explain her conduct over the preceding ten months constituted a willful deception and misrepresentation to the court, and that Drew had failed to abide by the minimum requirements of professional responsibility required for action on behalf of her client. The court concluded that the evidence supporting these findings was beyond a reasonable doubt and that Drew should therefore be sanctioned.

¶13 Counsel for Drew then stated that because there was no necessity for immediate action to restore the dignity of the court, she would again ask to have the matter brought before a different court. The court declined to grant the request. After indicating that it would enter its order in due course, the court recessed the proceedings.

¶14 On April 1, 2004, the District Court entered the Decision and Order which gave rise to these proceedings. In its Order, the District Court concluded that Drew failed to provide any credible or plausible explanation for her failure to comply with its Orders. Addressing Drew's Motion to Withdraw as Counsel of Record, the court noted that the motion consisted of only three pages, and only one sentence to the effect that she could not find any non-frivolous issues which might support Enright's Petition for Post-Conviction Relief. The court also concluded that Drew's explanations for her failure to act were "barely plausible, not credible, and totally unpersuasive." The court concluded that the evidence demonstrated beyond a reasonable doubt that Drew had willfully neglected and violated her duty to represent her client, and had violated an order of the court which was within her power to fulfill. The court further concluded that Drew's conduct constituted misrepresentation to and deception of the court and that her client had suffered for her failures. The court therefore entered an Order removing Drew from her representation of Enright, and ordering Drew to report to the Judith Basin County Jail for a period of thirty (30) days, commencing April 16, 2004. The court suspended all but seven (7) days of the jail sentence on the condition that Drew reimburse the entity or agency which had compensated her for her expenses involved in representing Enright, and that she file with the court and the affected agency a request for

relief from the obligation of reimbursement in the event she believed it would be impossible for her to make reimbursement. The court also fined Drew $500.00, which would be suspended upon the complete reimbursement.

¶15 On April 15, 2004, the day before she was to report to jail, Drew filed the Petition for Writ of Certiorari and Motion for Emergency Stay Order which commenced these proceedings. On April 20, 2004, we issued an Order staying execution of the District Court Judgment and Sentence in the contempt proceedings until further Order of the Court, and granting leave to the District Court of the Tenth Judicial District, the Office of the Attorney General, and the Montana Association of Criminal Defense Lawyers, to file briefs directed to the merits of Drew's Petitions. All three parties have now filed their briefs and this matter is therefore ripe for determination.

## DISCUSSION

¶16 Drew asserts that she was denied her right to full process, including the right to allocution, the right to a hearing before a neutral magistrate, and the right to present testimony through witnesses by way of defense or explanation. She therefore maintains her incarceration and other punishment is unlawful.

¶17 As noted in ¶ 8 above, the court asserted that it was proceeding under § 3-1-518, MCA (2001), which provides:

> **Hearing on contempt not committed in immediate view and presence of court or judge at chambers.** (1) When a person arrested for a contempt not committed in the immediate view and presence of the court or judge at chambers has been brought up or appeared, the court or judge shall proceed to investigate the charge, shall schedule and hold a hearing on any answer that

9

the person arrested may make to the charge, and may examine witnesses for or against the person, for which an adjournment may be had from time to time, if necessary. The judge investigating the charge and scheduling and presiding over the hearing may not be the judge against whom the contempt was allegedly committed, **except that if the contempt arose from the violation of an order of the court issued after a hearing on the merits of the subject of the order, the judge who issued the order may punish the contempt or compel compliance with the order unless it is shown that the judge would not be impartial in addressing the contempt.** (Emphasis added).

(2) the charged person must be given a reasonable opportunity to obtain counsel and prepare a defense or explanation prior to the hearing. The charged person may testify and call witnesses at the hearing.

¶18 Drew and amicus Montana Association of Criminal Defense Lawyers (MACDL) argue that we should be guided here by our decision in *Kauffman v. 21st Judicial Dist. Court*, 1998 MT 239, 291 Mont. 122, 966 P.2d 715. In *Kauffman*, this Court granted Kauffman's petition for writ of certiorari and reversed the district court's finding of contempt. In so doing, we addressed the various contempt statutes found in Title III, Chapter 1, section 5. Significantly, however, at the time *Kauffman* was decided, there was in existence a much abbreviated version of § 3-1-518, MCA, which bore little resemblance to the 2001 version under which Judge Tucker proceeded in this matter. Section 3-1-518, MCA (1999) provided as follows:

**Hearing**. When the person arrested has been brought up or appeared, the court or judge must proceed to investigate the charge, must hear any answer which the person arrested may make to the same, and may examine witnesses for or against him, for which an adjournment may be had from time to time, if necessary.

¶19 In *Kauffman*, we said that while a district court may subject a contemnor to summary contempt proceedings in those circumstances in which the individual's misconduct occurred

10

directly before the court and threatened the court's immediate ability to conduct its proceedings, full due process should be accorded in those cases in which it is not necessary for a court to take instant or immediate action. *Kauffman, ¶¶* 24 and 27. We noted that in *Lilienthal v. District Court*, *Etc.* (1982), 200 Mont. 236, 650 P.2d 779, we concluded that due process required:

> that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation. (Citations omitted).

*Lilienthal*, 200 Mont. at 242, 650 P.2d at 782. We also cited our Opinion in *Malee v. Dist. Court, Silver Bow County* (1996), 275 Mont. 72, 911 P.2d 831, in which we set forth the same list of due process requirements that were laid out in *Lilienthal*.

¶20 Concluding that Kauffman's conduct may well have satisfied the elements of § 3-1-501, MCA, we stated that contempt proceedings issued pursuant to that statute must provide for more due process protection for the contemnor than would be provided in a summary contempt proceeding. We concluded:

> In cases in which it is not necessary for a court to take instant action, however, a contemnor is entitled to full due process. This includes a hearing before a neutral judge, during which the contemnor is advised of the charges against him or her, has a reasonable opportunity to meet them by way of defense or explanation, has the right to be represented by counsel, has a chance to testify and call other witnesses on his behalf, and, in instances in which criminal punishment is a consequence, a finding of guilt beyond a reasonable doubt.

*Kauffman*, ¶ 33. In reversing the judgment of the district court, we concluded that because Kauffman's conduct did not necessitate immediate action, a summary contempt proceeding

11

by the same judge was not necessary and violated her due process rights. We therefore remanded for a hearing in front of a different judge. *Kauffman*, ¶ 35.

¶21 Drew argues that the safeguards announced in *Kauffman* were denied to her. She contends her punishment is unlawful because she was denied her right to full due process, including the right to allocution, the right to a hearing before a neutral magistrate, and the right to present testimony through witnesses by way of defense or explanation. She also claims there was an insufficient showing upon which the court could have found her guilty of contempt beyond a reasonable doubt.

¶22 *Amicus* MACDL acknowledges that when *Kauffman* was decided, the Montana statutes relating to contempt, found in Title III, did not cover the issue presently before the Court. Citing the amendments to § 3-1-518, MCA, made by the 2001 Legislature, MACDL maintains that the changes made to the statute do not change the rule of *Kauffman* that an alleged contemnor is still entitled to a neutral judge. In the alternative, MACDL argues that if we determine that the changes the 2001 Legislature made to § 3-1-518, MCA, have somehow overruled *Kauffman*, we should announce a new rule to the effect that any judge who makes a finding about the credibility of a contemnor prior to a contempt hearing, must be disqualified as a matter of due process.

¶23 In its response to the constitutional challenge, the Attorney General maintains that § 3-1-518, MCA (2001), is neither overbroad nor void for vagueness. It also maintains that indirect contempt may be punished with either civil or criminal sanctions, and that the authority for these sanctions is found in §§ 3-1-511 and 3-1-520, MCA. Finally, it argues

12

that the power to inflict punishment for contempt is an inherent power, with its roots in common law, citing *State v. District Court* (1916), 52 Mont. 46, 155 P. 278. The Attorney General maintains that Drew has failed to sustain her burden of proving that the statute is unconstitutional beyond a reasonable doubt.

¶24 The Tenth Judicial District Court also filed a response to Drew's Petition. In it, the District Court defends its action under § 3-1-518, MCA (2001), contending it complied in all respects with the amended provisions of the statute and with the requirements of due process. The District Court asks us to defer to the policy implemented by the Legislature when it amended § 3-1-518, MCA, and to find that Drew was accorded full due process under the statute. In that regard, it points out that Drew was advised of the charges in the Order to Show Cause of March 4, 2004 and given until March 25 to prepare for the hearing, and that Drew has not complained she had insufficient time. Moreover, Drew was represented by counsel, and was sworn as a witness at the hearing and provided an opportunity to call other witnesses, all as required under the provisions of § 3-1-518(1) and (2), MCA.

¶25 As noted above, in both *Lilienthal* and *Malee*, we held that due process required notice of the charges against the contemnor, a reasonable opportunity to meet them by way of a defense or explanation, the right to be represented by counsel, and the right to testify and call other witnesses on one's behalf. In reaching this conclusion in 1982 and again in 1996, we relied upon the United States Supreme Court case of *In re Oliver* (1948), 333 U.S. 257, 275, 68 S. Ct. 499, 508-09, 92 L. Ed. 682, 695. The additional due process component

13

of the right to have a neutral judge did not enter our contempt of court due process jurisprudence until *Kauffman* was decided in 1998. Notably, then, after we decided *Kauffman*, HB 208, amending § 3-1-518, MCA was presented to and adopted by the Legislature. In the amended version, the Legislature provided that a judge investigating a contempt charge and presiding over a hearing of a person whose contempt was not committed in the immediate view and presence of the court, may not be the judge against whom the contempt was allegedly committed. However, the Legislature added the following caveat:

> except that if the contempt arose from the violation of an order of the court issued after a hearing on the merits of the subject of the order, the judge who issued the order may punish the contempt or compel compliance with the order unless it is shown that the judge would not be impartial in addressing the contempt.

Section 3-1-518(1), MCA (2001).

¶26 It is this provision that Judge Tucker maintains was followed to the letter, and which supports the action he took in this matter. No one--not even Drew--disputes that Drew violated an order of the District Court issued after a hearing on the merits of the subject of the order. As indicated above, the District Court entered a Second Order to Show Cause on January 15, 2004, ordering Drew to appear in court on February 5, 2004, to show cause why she had not filed the amended petition for post-conviction relief on Enright's behalf. Drew appeared as directed on February 5, with counsel. At the conclusion of that hearing the court indicated it would not jail Drew or fine her, provided she filed with the court a motion to withdraw with a supporting brief analogous to an *Anders* brief. The February 13 deadline was chosen by Drew as reasonable and imposed by the Court. Nonetheless, Drew failed to

14

file the documents as represented, and failed to follow up with the court even after the court telephoned her to inquire about her failures. Using the statute's language, it is clear that Drew's contempt, which was addressed in the subsequent hearing of March 25, 2004, "arose from the violation of an order of the court issued after a hearing on the merits of the subject of the order." Section 3-1-518(1), MCA (2001). Thus, the situation described in the amended statute, which allows the judge who issues the order to punish the contempt, was squarely met here.

¶27 The only proviso against allowing a judge who issued an order to punish the contempt arising from violation of the order is where "it is shown that the judge would not be impartial in addressing the contempt." Section 3-1-518(1), MCA (2001). Drew and MACDL argue that because the District Court stated on the record that Drew had no credibility with the court, this was sufficient to establish that Judge Tucker could not be impartial in addressing the contempt. Judge Tucker disagrees, pointing out that if we accept Drew's argument, the amended provisions of the statute could virtually never be implemented. We tend to agree with Judge Tucker.

¶28 A straightforward analysis of a contempt proceeding illustrates the point. A person who appears before a court for violating a direct order of the court issued in a previous proceeding is--by definition--already in trouble. A court that is on the verge of finding that person in contempt has likely already rejected the person's explanations; in other words, it has found those excuses not credible. Were the excuses credible, presumably no finding of contempt would issue. If we conclude, as Drew urges us to do, that a judge who has

15

determined that the charged party lacks credibility is unable to be impartial in addressing the contempt, then virtually no judge who is understandably offended by a direct violation of his or her orders would be allowed to address the contempt, and the provisions of § 3-1-518, MCA, as amended, would be rendered meaningless.

¶29 Drew maintains that the amended statute, which allows the sitting judge to punish a contempt arising out of the failure to follow the court's orders, is unconstitutional. We must therefore determine whether the right to a neutral magistrate in all non-immediate contempt proceedings is constitutional in dimension, as Drew maintains, or whether the Legislature may appropriately permit a judge whose order issued after a hearing on the merits of the subject of the order is violated, to preside over the ensuing contempt proceedings, unless it is shown that he or she could not be impartial in addressing the contempt.

¶30 As noted above, until we decided *Kauffman*, the panoply of due process rights to which an alleged contemnor was entitled in Montana did not include the absolute right to appear before a neutral magistrate in every instance of non-immediate contempt proceedings. *See Lilienthal,* 200 Mont. 236, 650 P.2d 779 and *Malee,* 275 Mont. 72, 911 P.2d 831. Nor has Drew cited any case for the proposition that the entitlement to a neutral magistrate in all such proceedings is constitutional in dimension, which is her burden in a constitutional challenge. We conclude therefore that, provided § 3-1-518, MCA (2001) accords due process to the charged party, its provisions should be upheld.

¶31 Our decision in *Kauffman* does not preclude a finding that the revised statute is an appropriate exercise of legislative authority. When we superimposed the requirement of a

16

neutral magistrate over those cases in which it is not necessary for a court to take instant action, in *Kauffman* we did so without the benefit of the specific provisions of § 3-1-518(1), MCA (2001) that are at issue here. The revised statute now specifically recognizes that a right to a neutral magistrate exists in most cases. The sole exception is that case where, as here, the charged person has violated a court order issued after a hearing on the merits of the subject of the order. Because the exception to the rule at issue here did not exist and was therefore not in the contemplation of the Court when *Kauffman* was written, we will not apply our holding in *Kauffman* to the present situation.

¶32    Turning to the due process concerns, we note that the revised statute assures that the charged party shall be entitled to a hearing and to examine witnesses. The statute also takes into account the issue of partiality, by allowing the charged person to demonstrate that the sitting judge could not be impartial in meting out a contempt punishment. If such a showing is made, then the neutral magistrate requirement will be imposed. Thus, the revised statute contains its own due process safeguards.

¶33    It is important to bear in mind that the type of contempt punishable by the sitting judge under the statute is narrow in scope. It is only where an order of the court issued after a hearing on the merits is violated that the judge may act. Direct violation of such an order is, by definition, self-evident; in fact, Drew's violation of the order is not in dispute. There is thus less subjectivity involved in the finding of contempt under such circumstances than would exist in a more fluid open court setting. Moreover, as the legislative history of the amendment to the statute makes clear, the goal of the amendment was to ensure that justices

17

of the peace and city court judges, as well as district judges, would retain the power to punish disobedience of their own orders. The Montana Magistrates Association, in supporting the amendment, said that, if its members were precluded from hearing contempt proceedings stemming from their own orders, the necessity of calling in a second judge "would bring the lower court proceedings to a halt." The legislative history--and the statute as revised--further makes it clear that, in all other types of non-immediate contempt proceedings, *Kauffman's* call for a neutral magistrate would be the law.

¶34     Assuming, therefore, that the statute provides sufficient due process protections, we turn to the question of whether Drew has demonstrated that Judge Tucker could not be impartial in addressing her contempt, a finding that, if made, would compel the appointment of a neutral magistrate under the statute. Drew and MACDL argue that his finding that Drew lacked credibility rendered him unable to be impartial. We reject this argument for the reasons set forth above in ¶ 8. Drew did not present any other grounds in support of her request for a neutral magistrate. We therefore conclude that she has failed to demonstrate that Judge Tucker could not be impartial in meting out a contempt punishment.

¶35     In conclusion, we clarify that our decision in *Kauffman* remains sound. In fact, its mandate has now been incorporated into the statute. We further conclude, however, that due process is not offended by allowing a district judge to preside over a contempt hearing under the exception noted in § 3-1-518, MCA,--that is, where the contempt arose from the violation of an order of the court issued after a hearing on the merits of the subject of the order. In these situations, the district judge who conducted the hearing and issued the order should

18

retain the authority to punish violation of that order by contempt proceedings, as long as the other due process protections set forth in the statute and enunciated by this Court and the United States Supreme Court, are met and honored, and unless it is shown that the judge could not be impartial in addressing the contempt.

## CONCLUSION

¶36   For the foregoing reasons, Drew's Petition for Writ of Certiorari is denied.   We therefore lift the stay previously entered in this cause.

/S/ PATRICIA O. COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JOHN WARNER

Justice W. William Leaphart dissenting.

¶37    I dissent.

¶38    The present version of § 3-1-518, MCA, provides that a judge investigating a contempt charge and presiding over a hearing of a person whose contempt was not committed in the immediate view and presence of the court, may not be the judge against whom the contempt was allegedly committed unless the contempt arose from the violation of an order of the court, in which case the judge who issued the order may punish the contempt or compel compliance with the order "unless it is shown that the judge would not be impartial in addressing the contempt." Drew contends that when the judge declared that she had no credibility, the caveat was satisfied–that is, there was a showing that the judge would not be impartial in addressing the question of Drew's alleged contempt.  The Court, however,  agrees with Judge Tucker's assertion that, if the Court were to adopt Drew's position, the provisions of the statute could never be implemented–that the judge issuing the initial order could never punish for the contempt.

¶39     I disagree with the Court's conclusion that a judge who has predetermined that an alleged contemnor has no credibility can be impartial in addressing the issue of contempt. The Court reasons that, in reality, a judge on the verge of finding a person in contempt has already found the person not credible.  The premise for this analysis is false.  A judge on the verge of finding a person in contempt has not necessarily predetermined that the *person* lacks credibility.  More likely than not, the judge has found that the tendered *excuse* is insufficient to excuse the conduct in question.  The insufficiency of the excuse is entirely different from

21

the credibility of the accused person. If the accused's excuse is "I forgot," the judge may well believe that he or she in truth forgot but conclude that forgetfulness is not a valid excuse. It is not uncommon for an accused to argue that he or she interpreted the judge's order differently than did the judge. Again, although the judge may believe the interpretation was in good faith, the judge could conclude that the interpretation was not a reasonable one. None of these common scenarios involve a predetermination that the person, himself or herself, lacks credibility. The Court concludes that, if it were to hold that a judge who has determined that the charged person lacks credibility is unable to be impartial, "then virtually no judge who is understandably offended by a direct violation of his or her orders would be allowed to address the contempt, and the provisions of § 3-1-518, MCA, as amended, would be rendered meaningless." As the above examples illustrate, this is a gross exaggeration. A judge who finds that a tendered excuse is incredible may still be in a position to be impartial. On the other hand, a judge who finds that the person is incredible will not.

¶40 The Court's conclusion that a judge who has predetermined that the accused lacks credibility can still be impartial is, itself, incredible. Suppose that a juror on *voir dire* examination admits that he is familiar with the plaintiff and knows that the plaintiff is not a credible person. Would a court be justified in denying a challenge for cause on the basis the juror could, despite his prejudging the plaintiff's credibility, be impartial? Obviously not. By law, a juror is subject to challenge for cause for "the existence of a state of mind in the juror evincing enmity against or bias in favor of either party." Section 25-7-223(7),

22

MCA. I would hold a trial judge to the same standard of impartiality. If the judge has already determined that the party in question lacks credibility, then that judge has evinced a state of mind against that party and is not in a position to sit as an impartial jurist on the question of contempt.

¶41 Where, as here, an accused contemnor has shown that the judge has pre-judged her credibility, she has demonstrated that that judge has evinced an enmity towards her and cannot be impartial in meting out a contempt punishment. In such cases, due process requires that the neutral magistrate requirement be imposed.

/S/ W. WILLIAM LEAPHART