FILED

05/02/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: OP 17-0049

OP 17-0049

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2017 MT 99

SANDY VANSKYOCK,

      Petitioner,

   v.

THE TWENTIETH JUDICIAL DISTRICT COURT,
HON. JAMES A. MANLEY, DISTRICT JUDGE,

      Respondent.

APPEAL FROM:    District Court of the Twentieth Judicial District,
                    In and For the County of Sanders, Cause No. DC-12-28
                    Honorable James A. Manley, Presiding Judge

COUNSEL OF RECORD:

        For Petitioner:

                Andres N. Haladay, Assistant Attorney General, Agency Legal Services
                Bureau, Helena, Montana

        For Respondent Lance Christopher Pavlick:

                Lance P. Jasper, Eric R. Henkel, Reep, Bell, Laird & Jasper, P.C., Missoula,
                Montana

                                 Submitted on Briefs:  April 26, 2017

                                        Decided:  May 2, 2017

Filed:

_____
                           Clerk

**OPINION AND ORDER**

Justice Dirk M. Sandefur delivered the Opinion and Order of the Court.

¶1      Petitioner Sandy VanSkyock petitions this Court to issue a writ of supervisory control or other appropriate writ in Sanders County Cause No. DC-12-28, *State of Montana v. Lance Christopher Pavlik*, ordering the District Court to terminate contempt proceedings against her in that matter.  Counsel for Lance Christopher Pavlik has filed a response objecting to the petition and asking this Court to allow the contempt proceedings against VanSkyock to continue.

**BACKGROUND**

¶2      The rather convoluted procedural history of this matter began with Pavlik's 2013 entry of guilty pleas to two counts of vehicular homicide while under the influence and two counts of criminal endangerment.  On March 12, 2013, the District Court sentenced Pavlik on these convictions to a 30-year commitment to the Montana Department of Corrections (DOC) with all but 10 years suspended, and an additional 10-year suspended sentence for each of his criminal endangerment convictions.  The court ordered that the sentences for criminal endangerment would run concurrent to the sentences for vehicular homicide, so that, in total, Pavlik would serve a 30-year commitment to DOC with 20 years suspended. The court did not restrict Pavlik's parole eligibility and recommended that DOC place him in the WATCh program, "providing it meets with the approval of the Department of Corrections."

2

¶3     VanSkyock was the DOC probation officer who prepared the presentence investigation report in the case.  After the court sentenced Pavlik to a DOC commitment, VanSkyock requested by standard form that DOC override its usual preliminary placement screening process and place Pavlik directly at the Montana State Prison (MSP).  The originally asserted grounds for the override were that:  (1) Pavlik's unsuspended 10-year sentence rendered him ineligible by statute for placement at the Missoula Assessment Center (MASC); (2) "the intent of [his] sentence" was that he serve the first 5 years of his unsuspended sentence before "being screened for the WATCh Knights Program"; and (3) "[t]here is much public sentiment about this case and it would be best for all if this offender was transferred to MSP."

¶4     DOC MASC/Passages Administrator Dan Maloughney approved the override request and DOC placed Pavlik at MSP.  Upon review of the override, acting DOC ACCD Administrator Cathy Gordon:  (1) concluded that VanSkyock's initial request erroneously stated that the court imposed a 5-year parole restriction; (2) issued a revised *Override & Referral Form* stating that the sole reason for the override was that Pavlik's unsuspended 10-year sentence rendered him ineligible by statute for placement at MASC; and (3) directing that VanSkyock's original override request form be destroyed and superseded by the revised form.

¶5     Three years after sentencing, Pavlik moved the District Court to hold VanSkyock in contempt and sanction her in her individual capacity on the asserted ground that she contemptuously circumvented or interfered with the authority and sentencing order of the court by requesting the DOC preliminary placement screening override based on falsified

3

information, thereby effectively precluding or delaying his placement in the WATCh program and impeding his parole eligibility. VanSkyock moved to dismiss the contempt proceedings based on lack of jurisdiction, the statute of limitations, and because she cannot be held in contempt for DOC's valid placement decision. The District Court denied her motion to dismiss, and VanSkyock now asks this Court to intervene via supervisory control or other appropriate writ.

**DISCUSSION**

¶6 Supervisory control is an extraordinary remedy justified when urgency or emergency factors make the normal appeal process inadequate, the case involves purely legal questions, and the other court is proceeding under a mistake of law causing a gross injustice. M. R. App. P. 14(3). We conclude those prerequisites are present in this case.

¶7 Pavlik's motion for contempt asserted that VanSkyock "deserves to be held in contempt until such time as this wrong is fully righted" and thus "respectfully request[ed] . . . holding [VanSkyock] in contempt and imposing an appropriate sanction for said contempt" pursuant to "§ 3-1-501, et seq., [MCA]". Pavlik accordingly requested a contempt hearing pursuant to § 3-1-518, MCA.

¶8 By its express terms, § 3-1-518(1), MCA, applies to alleged contempts "not committed in the immediate view and presence of the court or judge." Thus, the alleged contempt is an "indirect contempt" rather than a "direct contempt." *See Kaufman v. Montana Twenty-First Jud. Dist. Ct.*, 1998 MT 239, ¶¶ 19 and 25, 291 Mont. 122, 966 P.2d 715. The distinction between direct and indirect contempts "is critical" to the determination of the proper contempt procedure. *Kaufman*, ¶ 19.

4

¶9 Also critical to the determination of the proper contempt procedure is the distinction between criminal and civil contempts. A contempt proceeding is criminal if the purpose of the proceeding is to impose a penalty "to punish the contemnor for a specific act" thereby "vindicat[ing] the authority of the court." Section 3-1-501(3), MCA; *Kaufman*, ¶ 17. On a criminal contempt, "the contemnor cannot end the incarceration or avoid the fine by complying with [the subject] court order." Section 3-1-501(3), MCA; *see also Kaufman*, ¶ 17. In contrast, a contempt proceeding is civil if the purpose of the proceeding is to impose a contingent jail or monetary sanction "to force the contemnor's compliance with a court order." Section 3-1-501(3), MCA; *Kaufman*, ¶ 17. In contrast to a criminal contempt, a civil "contemnor can end the incarceration or avoid the fine by complying with [the subject] court order." Section 3-1-501(3), MCA; Kaufman, ¶ 17.

¶10 The distinction between a criminal and civil contempt has critical procedural due process implications. Except for direct contempts committed under circumstances requiring "immediate corrective steps . . . to restore order, maintain [the] dignity and authority of the court, and to prevent delay,"[1] criminal contempt proceedings require the full procedural due process protections of "proof beyond a reasonable doubt," a "hearing before a neutral judge," advance notice "of the charges" against the alleged contemnor, "the right to be represented by counsel," and "a reasonable opportunity" to oppose the charges "by defense or explanation" and the opportunity to "testify and call other

---

[1] The summary contempt procedure specified by § 3-1-511, MCA (criminal punishment of direct contempts necessary "to restore order, maintain the dignity or authority of the court, or prevent delay"), complies with minimum due process standards. *See Kaufman*, ¶¶ 31-32.

witnesses." *Kaufman*, ¶¶ 31, 33. In response to *Kaufman*, the Montana Legislature repealed the prior Title 3, MCA, criminal sanction for indirect contempt and effectively provided that Title 3 indirect contempts are now punishable only by formal prosecution by the State of Montana under the general rules of criminal procedure specified by Title 46, MCA. Section 3-1-501(4), MCA; 2001 Mont. Laws 2458, 2460 (inter alia repealing former § 3-1-519, MCA).

¶11 Here, it is unclear from Pavlik's Motion For Order Of Contempt whether he asks the District Court to hold VanSkyock in indirect civil contempt or indirect criminal contempt. Without need to pass on the correctness of the District Court's interpretation of the motion as a motion for civil contempt, Pavlik's contempt motion is fatally defective as a matter of law in either event.[2] If viewed as a motion for criminal contempt, indirect criminal contempts defined by Title 3, Chapter 1, MCA, are prosecutable only by the State by separate criminal proceeding commenced and prosecuted pursuant to Title 46, MCA. *See* § 3-1-501(4), MCA (the "procedures provided by Title 46 apply to criminal contempt prosecutions, except those under 3-1-511"). Thus, Pavlik's motion fails to state a cognizable claim for criminal contempt as a matter of law.

¶12 Pavlik's motion is similarly defective as a motion for indirect civil contempt. When a district court commits a criminal defendant to DOC for placement pursuant to § 46-18-201(3)(a)(iv)(A), MCA, the sentencing court has no authority to direct or control where or in what program DOC ultimately places the defendant for the term of sentence.

---

[2] While we choose to resolve this matter on substantive grounds, Pavlik's contempt motion was also procedurally defective in violation of the affidavit requirement of § 3-1-512, MCA.

*State v. Bekemans*, 2013 MT 11, ¶ 49, 368 Mont. 235, 293 P.3d 843. The sentencing court may recommend a particular placement for DOC consideration but the recommendation is not binding on DOC. *Bekemans*, ¶ 49. Thus, as a threshold matter of law, the DOC placement "override" at issue was not an override, disregard, or circumvention of the District Court's sentencing order or authority, it was an internal exercise of DOC placement authority and discretion, however well-grounded.[3] Assuming *arguendo* the truth of the factual allegations against VanSkyock, her conduct was not a contempt, as defined by § 3-1-501(1)(c), (d), or (i), MCA, of the District Court's sentencing order or authority as a threshold matter of law.

¶13 In any event, a cognizable claim for civil contempt must seek to compel performance of "an act that is in the power of the contemnor to perform." Section 3-1-520, MCA. Pavlik's motion does not seek a contempt citation and sanction against DOC as an entity or *against* VanSkyock as a DOC officer, administrator, or authorized agent in ultimate placement authority. Rather, it merely seeks a contempt citation and sanction against VanSkyock in her individual capacity as the line-level probation and parole officer who initially requested that the authorized DOC official(s) "override" the usual preliminary DOC commitment screening process and place Pavlik directly at the Montana State Prison. Pavlik's motion and briefing, the District Court's order, and Pavlik's response on supervisory control are all devoid of any legal showing or indication that a line-level

---

[3] Whether and what remedy independent of the underlying criminal case may be available for redress or review of internal DOC placement decisions within the scope of its statutory discretion under § 46-18-201(3)(a)(iv)(A), MCA, is beyond the limited scope of our review on supervisory control here.

7

probation officer, as distinct from DOC as an agency or its authorized placement officer(s), has the authority to initially determine, or subsequently alter, a placement within the context of a court-ordered DOC commitment for placement in an appropriate correctional facility or program under § 46-18-201(3)(a)(iv)(A), MCA. Beyond asserting that VanSkyock should "be held in contempt until such time as this wrong is fully righted," Pavlik's motion and brief fail to state or seek performance of any specific act that would remedy the alleged wrong and be in VanSkyock's power to perform. Thus, as a matter of law, Pavlik's motion fails to state a cognizable claim for civil contempt.

¶14 We conclude that the District Court erred as a matter of law in failing to grant VanSkyock's motion to dismiss the contempt proceeding on the foregoing grounds asserted in her motion to dismiss. The normal appeal process is inadequate, and the District Court is proceeding under a mistake of law causing a gross injustice. Therefore, in the exercise of our power of supervisory control, we hereby reverse the District Court's order denying VanSkyock's motion to dismiss, and remand for denial of Pavlik's contempt motion.

¶15 The Clerk is directed to provide a copy of this Order to all counsel of record; to the Hon. James A. Manley, Twentieth Judicial District Court, Lake County; and to Lyn Fricker, Clerk of District Court, Lake County.

Dated this 2nd day of May, 2017.

/S/ DIRK M. SANDEFUR

8

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ JIM RICE