FILED

06/13/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: OP 17-0262

OP 17-0262

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2017 MT 144

ROBERTA CROSS GUNS, ESQ.,

      Petitioner,

    v.

EIGHTH JUDICIAL DISTRICT COURT,
JUDGE GREG PINSKI, PRESIDING JUDGE,

      Respondent.

APPEAL FROM:    District Court of the Eighth Judicial District,
                      In and For the County of Cascade, Cause No. SB-16-1399
                      Honorable Gregory G. Pinski, Presiding Judge

COUNSEL OF RECORD:

      For Petitioner:

          Roberta Miller Cross Guns, Self-represented; Great Falls, Montana

      For Respondent:

          The Honorable Gregory G. Pinski, Self-represented; Great Falls, Montana

                              Decided: June 13, 2017

Filed:

                                  Clerk

**OPINON AND ORDER**

Justice Laurie McKinnon delivered the Opinion and Order of the Court.

¶1 Representing herself, Petitioner Roberta Cross Guns seeks a writ of review concerning an order of contempt entered April 14, 2017, in the Eighth Judicial District Court, Cascade County, the Honorable Gregory G. Pinski presiding. Cross Guns also requested a stay of the order, which imposed a $500 fine and $1,124.76 in costs. On May 12, 2017, this Court stayed that portion of the order requiring payment of the $500 fine.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2 The instant contempt proceeding arises from Cross Guns' failure to appear at a termination of parental rights hearing before Judge Pinski. Cross Guns is a contract attorney with the Office of the Public Defender and has, for the last two years, been assigned as Birth Father's counsel in a youth in need of care proceeding. On January 20, 2017, the Cascade County District Court issued an order setting a termination hearing for March 1, 2017. In mid-February, however, Cross Guns requested continuances in three separate matters in the Ninth Judicial District Court, Glacier County, which that court also set for March 1, 2017. Cross Guns apparently did not recognize her scheduling conflict until February 22, 2017, less than a week before she was to appear in the separate judicial districts for the multiple hearings. Cross Guns attempted to secure substitute counsel for the hearing in Cascade County, but ultimately was unsuccessful.

¶3 On February 28, 2017, the day before the termination hearing in Cascade County, Cross Guns filed an unopposed motion and proposed order to vacate the hearing. She

2

e-mailed a copy to the County Attorney and hand-delivered a copy to Judge Pinski's chambers. Cross Guns subsequently testified that she attempted to make *ex parte* contact with Judge Pinski to discuss her pending motion to continue; however, Judge Pinski was unavailable and Cross Guns was advised by Judge Pinski's Judicial Assistant that her motion for continuance had been denied.

¶4 Judge Pinski convened the March 1, 2017, termination hearing. As a courtesy to Cross Guns, Judge Pinski *sua sponte* offered Cross Guns the opportunity to appear by video conferencing or by calling his personal cell phone, because the court's telephone system was not functioning due to audio-visual upgrades. Despite Judge Pinski's efforts, Cross Guns was unable to arrange an appearance by video conference in Glacier County and she also did not respond to the court's phone calls. Cross Guns never appeared for the hearing. Judge Pinski correctly determined he could not proceed in her absence and was forced to continue the termination hearing until April 12, 2017. Present for the March 1, 2017 hearing were the Deputy County Attorney, several witnesses subpoenaed by the State, an Indian Child Welfare Act (ICWA) expert, other attorneys, the Guardian ad Litem, court staff (court reporter, court clerk, and bailiff), and Judge Pinski—all of whom waited while the court attempted to reach Cross Guns. Further, the State had provided notice to the Tribe and personally served Cross Guns' client. It is worth emphasizing that the hearing had been scheduled for five weeks and that Cross Guns had filed her motion for continuance one day prior to the hearing.

¶5 Following Cross Guns' failure to appear, Judge Pinski issued an order on March 6, 2017, "under § 3-1-511, MCA" directing Cross Guns to appear on April 12, 2017, and

3

show cause why she should not be held in contempt in violation of § 3-1-501, MCA, for disobedience of a lawful order of the court; willful neglect and violation of her duties as an attorney; and for the court to consider whether she should be responsible for attorney fees of counsel, costs of the proceedings, and/or otherwise sanctioned.

¶6 On April 12, 2017, the District Court conducted the termination hearing with Cross Guns present, followed by the contempt hearing. Cross Guns was represented by counsel for the contempt portion of the hearing. Cross Guns indicated that she had unsuccessfully attempted to find substitute counsel and was unable to appear by video conference from Glacier County. Cross Guns related that she did not answer the court's phone calls because the Ninth Judicial District Court requires cellular phones to be silent. She also represented that at the time the March 1, 2017 termination hearing was initially scheduled, she believed her client would relinquish his parental rights and indicated she wanted the hearing to proceed because her client was not going to appear and the matter needed to be concluded. Cross Guns represented that she sought to avoid disobeying the court's order and inconvenience to the court and others involved in the proceeding. She represented that she found the scheduling order confusing because it was signed by the Honorable Thomas M. McKittrick, while Judge Pinski was the presiding judge over the termination proceeding.[1] Finally, Cross Guns represented that during February of 2017 she was emotionally distraught due to a medical emergency involving her daughter, which ultimately required Cross Guns to travel to Hawaii to assist her daughter. Cross Guns attributed her failure to

_____

[1] Judge Pinski replaced Judge McKittrick when Judge McKittrick retired.

4

calendar the hearing to all of these reasons. Cross Guns has filed transcripts from the hearing, which this Court has reviewed.

¶7 Cross Guns asserts in the instant Petition for Writ of Review that Judge Pinski lacked jurisdiction to issue the order of contempt. More specifically, Cross Guns maintains that pursuant to § 3-1-501(3), MCA, the contempt hearing was criminal in nature, even though there was no arrest. Cross Guns argues she was not afforded due process as required by § 3-1-518, MCA, and that Judge Pinski violated her "due process rights by refusing to recuse himself and allow a neutral judge to hear the matter[.]" Cross Guns has filed an affidavit in support of her petition.

## STANDARD OF REVIEW

¶8 Pursuant to § 3-1-523(1), MCA, this Court may review the judgment and orders of a district court in cases of contempt on a writ of certiorari. Section 27-25-101, MCA, provides that a "writ of certiorari may be denominated the writ of review." A writ of review may be granted by "the supreme court . . . in proceedings for contempt in the district court" or "when a [district court] has exceeded [its] jurisdiction . . . and there is no appeal or, in the judgment of the court, any plain, speedy, and adequate remedy." Section 27-25-102, MCA. Montana Rule of Appellate Procedure 14 provides that a writ of review or certiorari is an extraordinary writ which "shall be commenced and conducted in the manner prescribed by the applicable sections of the Montana Code Annotated for the conduct of such or analogous proceedings and by these rules."

¶9 In reviewing contempt proceedings, "we determine whether substantial evidence supports the judgment of contempt, and whether the district court had jurisdiction to issue

5

the order." *Malee v. District Court for the Second Judicial Dist.*, 275 Mont. 72, 75, 911 P.2d 831, 832 (citing *Marks v. First Judicial Dist. Ct.*, 239 Mont. 428, 430, 781 P.2d 249, 250 (1989); *State ex rel. Foss v. Dist. Ct.*, 216 Mont. 327, 331, 701 P.2d 342, 345 (1985); *Matter of Graveley*, 188 Mont. 546, 555, 614 P.2d 1033, 1039 (1980)).

**DISCUSSION**

¶10    There are two relevant characterizations necessary for review of a lower court's order or judgment of contempt. The first is to ascertain whether the contempt is civil or criminal. The significance of such a characterization is that it directs the court as to the penalty that may be imposed. Section 3-1-501(3), MCA, provides:

> A contempt may be either civil or criminal. A contempt is civil if the sanction imposed seeks to force the contemnor's compliance with a court order. A contempt is criminal if the court's purpose in imposing the penalty is to punish the contemnor for a specific act and to vindicate the authority of the court. If the penalty imposed is incarceration, a fine, or both, the contempt is civil if the contemnor can end the incarceration or avoid the fine by complying with a court order and is criminal if the contemnor cannot end the incarceration or avoid the fine by complying with a court order. If the court's purpose in imposing the sanction is to attempt to compel the contemnor's performance of an act, the court shall impose the sanction under 3-1-520 and may not impose a sanction under 45-7-309.

¶11    When the sanction is for civil contempt because the sanction "seeks to compel the contemnor to perform an act that is in the power of the contemnor to perform," the contemnor may be "incarcerated, subjected to a fine in an amount not to exceed $500, or both, until the contemnor has performed the act." Section 3-1-520, MCA. Sections 3-1-501(1) and 45-7-309(1), MCA, set forth conduct or acts which constitute offenses of criminal contempt. Pursuant to these subsections, behavior which interrupts the due course of a trial or other judicial proceeding, disobedience of any lawful order of the court, willful

6

neglect or violation of duty by an attorney, or any other unlawful interference with the proceedings of a court are examples of behavior which constitute criminal contempt.

¶12 Section 3-1-501(3), MCA, directs that a criminal contempt is punishable as set forth in § 45-7-309, MCA. Section 45-7-309, MCA, provides that "a person convicted of the offense of criminal contempt shall be fined not to exceed $500 or be imprisoned in the county jail for a term not to exceed 6 months, or both." Significantly, however, "[t]he procedures provided in Title 46 [relating to a criminal prosecution] apply to criminal contempt prosecutions, *except those under 3-1-511*." Section 3-1-501(4), MCA (emphasis added). Section 3-1-511, MCA, provides for a summary proceeding, and because it occurs without the protections afforded by Title 46, the penalty is less and may be a "fine in an amount not to exceed $500 or by imprisonment for a term not to exceed 30 days, or both, and by any other reasonable conditions or restrictions that the court may consider appropriate under the circumstances." Accordingly, if the provisions of § 3-1-511, MCA, have been properly utilized by the court, then the full panoply of rights available under Title 46 is not available to the contemnor.

¶13 Here, Cross Guns had no ability to "perform an act" which would avoid imposition of the District Court's $500 fine and $1,124.76 in court costs, despite the District Court's language that payment of said fine and costs would "purge" the contempt. The District Court sanctioned Cross Guns for her "misconduct and to deter future misconduct." The District Court ordered that "[a] failure to abide by this Order will result in *further* sanctions, including all available remedies for contempt of court." (Emphasis added.) The purpose of the court's order of contempt was to punish Cross Guns and can only be characterized

7

as holding Cross Guns in criminal contempt. The court's imposition of a $500 fine fell within the sanction parameters of either § 45-7-309(2), MCA, or, as the District Court specified, those of § 3-1-511, MCA.

¶14 The court also found that Cross Guns had unreasonably multiplied the proceedings and, pursuant to § 37-61-421, MCA, imposed costs of $1,124.76, which represented the costs of the termination hearing that had to be continued as a result of Cross Guns' misconduct. Section 37-61-421, MCA, provides that "[a]ny attorney or party to any court proceeding who, in the determination of the court, multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney fees reasonably incurred because of such conduct." Here, it is clear that Cross Guns' failure to appear for the termination hearing multiplied the proceedings—another termination proceeding had to be scheduled due to her conduct. The District Court determined that personally assessing costs against Cross Guns was reasonable. The District Court had authority to impose costs under the plain language of § 37-61-421, MCA. We also conclude that the court had authority to sanction Cross Guns by imposing costs pursuant to § 3-1-511, MCA, which allows for "any other reasonable conditions or restrictions that the court may consider appropriate under the circumstances."

¶15 The second critical characterization of an order or judgment of contempt is to identify whether the contempt was committed in the presence of the court and requires the court to take immediate action, § 3-1-511, MCA, or instead was not committed in immediate view and presence of the court, in which case the provisions of § 3-1-518, MCA, dealing with an indirect contempt apply. If the behavior is not committed within the

8

presence of the court, then "a contemnor is entitled to the full due process hearing traditionally associated with indirect contempt, a finding, in instances in which criminal punishment is a consequence, that the evidence establishes the contemnor's guilt beyond a reasonable doubt, and a hearing in front of an unbiased court other than that in which the misconduct occurred." *Kaufman v. Mont. Twenty-First Judicial Dist. Ct.*, 1998 MT 239, ¶ 31, 291 Mont. 122, 966 P.2d 715. This is likewise consistent with § 3-1-501(4), MCA, which requires that "[t]he procedures provided in Title 46 apply to criminal contempt prosecutions, except those under 3-1-511." The distinction between direct and indirect contempt, embodied in §§ 3-1-511 and -518, MCA, respectively, is thus "critical to a determination of the proper procedures which the court must follow." *Kaufman*, ¶ 19; *see also VanSkyock v. Manley*, 2017 MT 99, ¶ 8, 387 Mont. 307, 393 P.3d 1068.

¶16 Section 3-1-511, MCA, provides that "[w]hen a contempt is committed in the immediate view and presence of the court or judge at chambers and the contemptuous conduct requires immediate action in order to restore order, maintain the dignity or authority of the court, or prevent delay, it may be punished summarily." Even though the proceedings may be conducted in a summary fashion by the judge against whom the contemptuous conduct occurred, the contemnor must nonetheless be "informed of the contempt and given an opportunity to defend or explain the person's conduct." Section 3-1-511, MCA. We have recognized that, in conjunction with § 3-1-511, MCA, "direct contempt may be summarily punished seemingly without any due process[,]" but we have also held that "the contemnor must be granted an opportunity to explain or excuse himself.

9

Such opportunity allows the individual to potentially purge himself or show no contempt was intended." *Malee*, 275 Mont. at 78, 911 P.2d at 834.

¶17    A direct contempt committed in the presence of the court occurs when the court "personally observes the elements of the offense. Thus, there is no need for extrinsic evidence to prove the elements of what is before the court." *Malee,* 275 Mont. at 77, 911 P.2d at 833. This reflects "the rationale that no extrinsic evidence, such as testimony of third parties or affidavits, need be introduced to prove direct contempt." *Malee*, 275 Mont. at 76, 911 P.2d at 833. We have endorsed the Ninth Circuit's distinction between direct and indirect contempt observing that "[i]ndirect contempt is contumacious behavior occurring beyond the eye or hearing of the court and for knowledge of which the court must depend upon the testimony of third parties or the confession of the contemnor." *Malee*, 275 Mont. at 76, 911 P.2d 833 (citing *United States v. Marshall*, 451 F.2d 372, 373 (9th Cir. 1971)). However, in a case of direct contempt, "the pertinent facts are not disclosed by the presiding judge through the medium of witnesses, but are such as are observed by the judge himself." *Malee*, 275 Mont. at 76, 911 P.2d at 833 (quoting *State ex rel. Rankin v. District Court*, 58 Mont. 276, 291, 191 P. 772, 775 (1920)). If a matter, such as a trial, is in progress or in recess, this Court has construed any contempt as direct contempt. *Malee*, 275 Mont. at 76, 911 P.2d at 833.

¶18    The District Court relied upon the provisions of § 3-1-511, MCA, when it found Cross Guns had committed a contempt of court. From a review of the record, we conclude the District Court correctly determined that it had witnessed behavior by Cross Guns, which, although committed through her absence, caused an undue delay in the proceedings.

10

Judge Pinski had no need of testimony from third persons, an affidavit of facts to gain knowledge of the offense, or a confession from Cross Guns as to her contemptuous conduct. It was, in fact, Cross Guns' failure to appear before Judge Pinski himself which constituted the direct contempt. The contemptuous behavior occurred in front of "the eye or hearing of the court" and did not necessitate extrinsic evidence or depend upon the testimony of third parties or the confession of Cross Guns. The District Court complied with the provisions of § 3-1-511, MCA, requiring that the contemnor be allowed an opportunity for allocution by holding the show cause hearing on April 12, 2017.

¶19 There was also substantial evidence to support the District Court's order of contempt. The District Court's Findings of Fact, Conclusions of Law, and Order Holding Attorney Roberta Cross Guns in Contempt of Court, entered April 17, 2017, is comprehensive, thorough, and represents considerable deliberation by the District Court. Cross Guns' failure to appear and her disruption to the orderly process of the court constituted a disobedience of a lawful order of the court. Cross Guns waited until the day before the hearing to file a motion for continuance of a hearing that had been scheduled for five weeks. Dependency and neglect proceedings have priority regarding scheduling and the underlying matter had been pending for nearly two years. The court observed that this was not the first occasion that Cross Guns had disrupted court process by failing to abide by a lawful order of the court. Most importantly, however, a district court must be able to hold accountable those persons who, pursuant to a lawful court order, are responsible for being present and are necessary for the court to discharge its responsibility of conducting court business. We conclude there was substantial evidence to support the District Court's

11

order of contempt pursuant to § 3-1-511, MCA, and that the court did not exceed its jurisdiction by sanctioning Cross Guns for her contemptuous conduct.

¶20     Finally, we take the opportunity to distinguish the instant proceeding from *Kaufman*, where we found an attorney's failure to appear at a termination hearing did not warrant immediate corrective action. In *Kaufman*, there was no delay in the proceedings due to Kaufman's absence, as here; the hearing transpired with substitute counsel. The alleged contemptuous conduct did not occur until after the termination hearing when the court determined that Kaufman's testimony at the contempt hearing conflicted with testimony provided by other witnesses surrounding the substitution of counsel. Significantly, in *Kaufman*, the court relied upon extrinsic evidence and the testimony of third persons in reaching its conclusion that Kaufman was in contempt of the court's order appointing her to represent the mother in the termination proceedings. We clarified in *Kaufman* that a summary contempt proceeding is limited to "those circumstances in which the misconduct threatens the court's immediate ability to conduct its proceedings and instant action is necessary." *Kaufman*, ¶ 32. Unlike in *Kaufman*, here the District Court was forced to delay a hearing and issued a show cause order immediately following Cross Guns' contemptuous conduct, which the court witnessed first-hand. The purpose of the show cause order was to give Cross Guns the opportunity for allocution, not to conduct a hearing to produce extrinsic evidence and consider testimony from witnesses. Cross Guns' contemptuous conduct and its effect on orderly court process and Cross Guns' disobedience of a lawful court order required that immediate action be taken by the District

12

Court in order to prevent delay, maintain the dignity and authority of the court, and restore order.

## CONCLUSION

¶21    For the foregoing reasons, we conclude that the District Court had jurisdiction of these contempt proceedings pursuant to § 3-1-511, MCA, and that substantial evidence supported the District Court's order of contempt. Accordingly, Cross Guns' Petition for a Writ of Review is denied. Our Order entered May 12, 2017, staying payment of the fine is vacated. Cross Guns is directed to pay the fine within 7 days of the date of this Opinion and Order.

¶22    The Clerk is directed to provide a copy of this Opinion and Order to Roberta Cross Guns personally, the Hon. Gregory G. Pinski and to the Clerk of District Court for Cascade County.

DATED this 13th day of June, 2017.

/S/ LAURIE McKINNON

We Concur:

/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR