ORIGINAL



FILED
10/15/2024
Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA
Case Number: OP 24-0437

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### OP 24-0437

WESLEY and KAREN TUSCANO,

Petitioners,

v.

MONTANA SIXTH JUDICIAL DISTRICT
COURT, SWEET GRASS COUNTY,
HON. BRENDA R. GILBERT, Presiding,

Respondent.

FILED

OCT 15 2024

Bowen Greenwood
Clerk of Supreme Court
State of Montana

O R D E R

Petitioners Wesley and Karen Tuscano, via counsel, seek a writ of review and alternate writ of supervisory control over the Sixth Judicial District Court, Sweet Grass County, in its Cause No. DV 2021-39. Tuscanos allege the District Court erroneously held them in contempt of court and further ordered a sanction for contempt not authorized by statute. At our request and pursuant to M. R. App. P. 14(7), Sidney and Julian Helvik, Plaintiffs and Counter-Defendants in the underlying litigation, and Jacquelin Conner, Third-Party Defendant in the underlying litigation, have filed responses in which they oppose Tuscanos' petition.

In April 2020, Helviks and Tuscanos entered into a written agreement in which Helviks agreed to sell real property to Tuscanos, who would pay for the property via installment payments, with the payment obligations terminating upon the first of either Helviks' respective deaths or after Tuscanos' payments totaled $500,000. In June 2020, Helviks executed a gift deed ("Gift Deed") to the property in favor of Tuscanos. On July 30, 2021, Tuscanos used the Gift Deed to encumber the property, entering into a Mortgage Agreement with Citizens Bank and Trust Company for $402,000. Tuscanos never made any payments to Helviks for the property.

In October 2021, Helviks commenced litigation seeking, in part, rescission of the April 2020 agreement and the Gift Deed, and quiet title to the property in their favor. In June 2023, a jury found that Tuscanos breached the April 2020 agreement, causing Helviks damages of $150,000, and that the Gift Deed was the result of undue influence on Tuscanos' part. The jury verdict form advised the jury that if it found the gift deed was the result of undue influence or fraud, the deed would be invalidated "and the Judge will determine other damages, if any."

At the time of trial, Tuscanos could have paid off the mortgage for $136,000 plus attorney fees. However, on July 24, 2023, Tuscanos used the Gift Deed—that the jury verdict had invalidated—to increase the mortgage with Citizens Bank and Trust Company to $600,000.

In a post-verdict decision, issued October 11, 2023, the District Court determined that the remedy for the jury's verdict that Tuscanos breached the April 2020 agreement and unduly influenced Helviks to convey the Gift Deed was to rescind the April 2020 agreement and to restore full and unencumbered title to Helviks. It thus vacated the jury's $150,000 damage award for Tuscanos missing all payments under the April 2020 agreement, as Helviks would not be entitled to damages for breach of contract if the contract was rescinded. It also concluded that merely returning title to Helviks would not cure the damages Tuscanos caused because of Tuscanos' mortgage. The District Court also found that, even though Tuscanos encumbered the property, they did not use any funds obtained from that mortgage to compensate Helviks. The court further quieted title in the property in favor of Helviks and ordered that Tuscanos must take all action necessary to accomplish and complete a release of the mortgage encumbering the property.

Tuscanos then appealed the matter to this Court, where briefing is pending. *Helvik v. Tuscano*, DA 23-0656. Tuscanos moved the District Court to stay the judgment during the pendency of the appeal on the condition that Tuscanos submit a $20,000 cash bond. Helviks objected, asserting the bond amount was inadequate. The District Court agreed with Helviks. It determined that Tuscanos would need to submit a surety bond in the

amount of $659,350.54 for the court to agree to stay the matter pending resolution of the appeal.

Tuscanos did not agree to the District Court's bond amount. After the District Court denied the stay, Tuscanos moved this Court for relief from the District Court's order pursuant to M. R. App. P. 22(2). We denied their motion for relief on December 19, 2023. Tuscanos subsequently filed a petition for rehearing, which we also denied on January 2, 2024.

Thus, with no stay of the judgment pending appeal, Tuscanos were obligated to comply with the District Court's October 11, 2023 Final Order and Judgment, which provides in relevant part:

> Within sixty days from the date of this Final Order and Judgment, Wesley and Karen Tuscano must take all action necessary to accomplish and complete a release of the Mortgage filed on July 30, 2021 by Citizens Bank and Trust Company which encumbers the real property. Upon Release of the Mortgage, and within three (3) business days from the release, Wesley and Karen Tuscano must ensure that all documents showing the release of the Mortgage and extinguishment of all encumbrances associated with the Mortgage are filed with the Sweet Grass County Clerk and Recorder. On the same date, the Tuscanos shall ensure that copies of all documents filed with the Sweet Grass County Clerk and Recorder are filed with the Clerk of District Court.

> Within ten (10) days of filing the Mortgage release documents with the Sweet Grass County Clerk and Recorder, Wesley and Karen Tuscano shall execute a Quitclaim Deed to the real property in favor of Julian Helvik and Sidney Helvik, as joint tenants with rights of survivorship, which shall include the legal description set forth in Paragraph V. of this Final Order and Judgment. Within three (3) business days of executing said Quitclaim Deed, Wesley and Karen Tuscano shall ensure that said executed Quitclaim Deed is filed with the Sweet Grass County Clerk and Recorder and shall pay all necessary recording fees.

Tuscanos did not complete these actions within sixty days of the Final Order and Judgment. On January 11, 2024, Helviks filed a Motion for Contempt Order and Request for Show Cause Hearing in the District Court. Tuscanos responded in opposition, asserting they were financially unable to comply with the October 11, 2023 Final Order and

Judgment. Tuscanos noted that, as of January 14, 2024, they would need to submit $235,070.95 to Citizens Bank and Trust Company to release the mortgage. By the time of the June 4, 2024 hearing on Helviks' motion, Tuscanos would have had to pay $240,000 to satisfy the mortgage and clear title to the property.

At the June 4, 2024 hearing, Wesley Tuscano admitted that Tuscanos used the Gift Deed to obtain an increased line of credit from Citizens Bank and Trust Company after the jury verdict invalidated the deed. Karen Tuscano testified that Tuscanos used the funds obtained from the increased mortgage to pay their attorney. The District Court found that Tuscanos' filing of the initial mortgage on June 30, 2021, and the modification on July 25, 2023, result in continuous injury to Helviks, including Helviks' inability to sell their property because of the encumbrance.

The District Court was not convinced that Tuscanos were unable to acquire the funds necessary to pay off the mortgage on Helviks' property. It noted that Wesley divested himself of his ownership interest in an LLC, to which he had transferred his $1 million interest in another LLC, "in favor of a yearly 'annual preferred return'" after Tuscanos obtained the Gift Deed. Furthermore, Wesley testified that Tuscanos' monthly household income was approximately $12,500, and Tuscanos presented no evidence that they were unable to liquidate certain valuable assets. Tuscanos further provided no documentation regarding their income or debts. The court found Tuscanos' assertions regarding their inability to pay off the mortgage was not credible because Tuscanos had failed to provide "a full set of facts regarding their assets and debts."

The court concluded that Helviks were entitled to execution and enforcement of the Final Order and Judgment because it was not stayed pending appeal. The court further concluded that, if Tuscanos are unable to perform, they willfully caused that inability and, as such, they were not entitled to rely on inability to pay as a defense.

The District Court concluded that Tuscanos were in contempt of the court's October 11, 2023 Final Order and Judgment. Pursuant to the court's power to enforce its order and judgment, it ordered Tuscanos to "immediately do all acts necessary to accomplish and complete a release of the Mortgage and Modification placed on the real

4

property at issue by Citizens Bank and Trust Company . . ." and to take further actions to transfer the deed to Helviks. It directed Tuscanos to take actions including but not limited to the sale, transfer, or encumbrance of their ownership rights in other items of value.

Finally, the order provides:

> [A]s a remedy for the Tuscanos' contempt, in the sole discretion of the Helviks, the Helviks may proceed with the sale of their real property that is the subject of this litigation. . . . If the Helviks choose to proceed with a sale, the proceeds . . . would be used, in part, to full satisfy the Tuscano's [sic] obligation owed to Citizens Bank and Trust Company. In this event, the sum paid to satisfy the obligation . . . would be immediately entered as a Supplemental Judgment herein . . . .

In response to the District Court's July 11, 2024 Findings of Fact, Conclusions of Law, and Order Regarding Contempt, Tuscanos filed this petition for writ of review and alternate writ of supervisory control.

The exclusive method for review of a contempt order in civil proceedings, apart from exceptions not applicable here, is by application for writ of certiorari (also known as a writ of review). Section 3-1-523, MCA; *Animal Found. of Great Falls v. Mont. Eighth Judicial Dist. Court*, 2011 MT 289, ¶ 16, 362 Mont. 485, 265 P.3d 659. In reviewing a contempt order, "we determine whether substantial evidence supports the judgment of contempt, and whether the district court had jurisdiction to issue the order." *Cross Guns v. Eighth Jud. Dist. Ct.*, 2017 MT 144, ¶ 9, 387 Mont. 525, 396 P.3d 133 (quoting *Malee v. Dist. Ct. for the Second Judicial Dist.*, 275 Mont. 72, 75, 911 P.2d 831, 832 (1996)).

Supervisory control is an extraordinary remedy that may be invoked when the case involves purely legal questions and urgent or emergency factors make the normal appeal process inadequate. M. R. App. P. 14(3). The case must meet one of three additional criteria: (a) the other court is proceeding under a mistake of law and is causing a gross injustice; (b) constitutional issues of state-wide importance are involved; or (c) the other court has granted or denied a motion for substitution of a judge in a criminal case. M. R. App. P. 14(3)(a)-(c). Whether supervisory control is appropriate is a case-by-case

decision. *Stokes v. Mont. Thirteenth Judicial Dist. Court*, 2011 MT 182, ¶ 5, 361 Mont. 279, 259 P.3d 754 (citations omitted).

In *Fouts v. Mont. Eighth Jud. Dist. Ct.*, 2022 MT 9, 407 Mont. 166, 502 P.3d 689, we set forth the criteria by which we consider the manner and scope of review we will undertake where an indirect contempt judgment and sanctions is not appealable. Although the scope of certiorari review is limited to record review as to whether the lower court acted in excess of its jurisdiction, our scope is not limited to whether the lower court acted within its subject matter and personal jurisdiction, but also more broadly encompasses whether the court acted within its authority under the governing procedural and substantive law based on the requisite facts as supported by substantial evidence. *Fouts*, ¶¶ 10-11 (citations omitted). Furthermore, assertions of error in contempt proceedings that are not subject to review within the limited scope of certiorari review are subject to review on supervisory control and thus, to the extent a certiorari petition seeks review of a contempt proceeding based on an assertion of error committed within the jurisdiction and authority of the lower court, we will treat the petition as one for an alternative writ of supervisory control. *Fouts*, ¶ 12 (citations and quotations omitted). By tandem operation of certiorari and supervisory control, our scope of review of indirect civil contempt judgments for which there is no remedy of appeal may therefore encompass whether the lower court: (1) acted within its subject matter and personal jurisdiction; (2) acted within its statutory or common law authority based on substantial evidence; or (3) otherwise abused its discretion in finding the contemnor in contempt or imposing a related coercive sanction resulting in prejudice to the contemnor. *Fouts*, ¶ 12.

In this case, Tuscanos raise three arguments. First, they argue that the court erred by finding them in contempt because they are unable to comply with the court's October 11, 2023 Final Order and Judgment. Second, they argue that none of their actions were contemptuous because they occurred prior to October 11, 2023. Third, they argue that the sanctions the court ordered are not permissible sanctions under § 3-1-520, MCA.

As to the first argument, Tuscanos maintain that the District Court erred by holding them in contempt for failing to comply with the court's October 11, 2023 Final Order and

6

Judgment because they are unable to comply with that order. Tuscanos rely on *Fouts*, which provides that a court may not impose a coercive civil sanction unless the subject act is in the power of the contemnor to perform. *Fouts*, ¶ 15 (citing § 3-1-520, MCA, and *VanSkyrock v. Manley*, 2017 MT 99, ¶ 13, 387 Mont. 307, 393 P.3d 1068). Tuscanos assert that the evidence they provided at the contempt hearing demonstrates that they are unable to perform because they do not have the financial wherewithal to pay the mortgage on Helviks' property. Tuscanos note that they testified that their assets, except for a pick-up truck valued at $5,000—and of which $4,000 of value is exempt—are not a viable source of cash to comply with the order because all of their assets are encumbered.

Tuscanos dispute the District Court's ruling that they "present[ed] no evidence to support their claim they cannot liquidate certain assets" because Tuscanos testified that their assets are encumbered. However, as made clear when read in context with the rest of the District Court's findings, the court gave little weight to Tuscanos' testimony because Tuscanos provided no documentary evidence to support their testimony. The court found Tuscanos provided "[n]o documentation . . . regarding any income or debt." It found their "assertions . . . not reliable" where they failed to "present a full set of facts regarding their assets and debt" and that they were "not without assets or holdings." Moreover, and crucial to the court's determination of contempt, the court found:

> The situation now realized by Tuscanos is of their own making, including but not limited to: Tuscanos obtaining the Gift Deed by undue influence; their mortgage encumbrance on Helviks' property (including the increased encumbrance filed July 25, 2023); Wesley Tuscano's transfer of his interest in his business endeavors to CW Bar Machinery after he obtained the Gift Deed; and their general financial situation.

Courts may not adjudge a defendant in contempt for not doing an impossibility, nor for not doing what it is not in the defendant's power to do, unless the defendant has voluntarily rendered themselves unable to do the act—and where the creation of the disability was itself a willful act. *Fouts*, ¶ 9 (citing *State ex rel McLean v. Mont. Second Jud. Dist. Ct.*, 37 Mont. 485, 488-89, 97 P. 841, 842 (1908)). In the present case, Tuscanos encumbered Helviks' property with a mortgage and then spent those funds. Even assuming

7

Tuscanos' claims of inability to pay are true, by spending those funds, Tuscanos voluntarily rendered themselves unable to repay the mortgage and thus they cannot avail themselves of the defense of impossibility. As found by the District Court, the situation now realized by Tuscanos is of their own making. The District Court acted within its authority when it found Tuscanos in contempt.

Tuscanos next argue that the District Court erred in finding their actions contemptuous because their allegedly contemptuous actions all occurred prior to October 11, 2023, and thus they did not undertake those actions in contempt of the October 11, 2023 order. However, Tuscanos misconstrue what actions the court found contemptuous: In the contempt order, the court specifically found that Tuscanos had failed to perform the acts they were ordered to perform in the October 11, 2023 order. Their failure to comply was the basis for the contempt order. The court's discussion of the acts Tuscanos took in further encumbering the deed after the jury's verdict and prior to the October 11, 2023 order were in refutation of Tuscanos' raised defense to the contempt allegations of inability to comply.

Finally, Tuscanos argue that the District Court exceeded its contempt powers by imposing a sanction not authorized by statute. Tuscanos argue that the court is limited to those sanctions enumerated in § 3-1-520, MCA: "When the sanction imposed for a contempt seeks to compel the contemnor to perform an act that is in the power of the contemnor to perform, the contemnor may be incarcerated, subjected to a fine in an amount not to exceed $500, or both, until the contemnor has performed the act. The act must be specified in the warrant of commitment."

Tuscanos argue that the court cannot impose a sanction of ordering them to sell their personal and real property and granting Helviks' permission to sell the property because those actions are not enumerated as permissible sanctions in § 3-1-520, MCA. Tuscanos rely on *Fouts*, ¶ 16, which provides in part that, upon a finding of indirect contempt, § 3-1-520, MCA, allows a court to impose a coercive civil sanction not to exceed $500 in an attempt to compel the contemnor to perform the subject act. Tuscanos argue that the sanction the District Court attempts to impose in this matter far exceed a $500 fine.

8

As summarized above, the District Court ordered Tuscanos to immediately accomplish a release of the mortgage and execute a quitclaim deed to Helviks. It directed Tuscanos to take "all acts necessary" to accomplish these tasks, including selling or encumbering their other assets. The court further ordered that Helviks can sell the property at issue and if proceeds from that sale were used to satisfy Tuscanos' mortgage, Tuscanos would be required to pay that amount as part of the judgment in this case.

In short, the District Court ruled that Tuscanos need to find a way to pay off the mortgage, even at inconvenience to them. They must transfer the deed to Helviks. Helviks may sell their property. It then enunciated the consequences that Tuscanos' mortgage would cause if Helviks indeed proceed to sell their property. The court predicted that Helviks would have to use all or part of the sale proceeds to pay off Tuscanos' mortgage that encumbers the property. It then advised the parties that it would enter a supplemental judgment to allow Helviks to recover those funds from Tuscanos, and that it would order Tuscanos to provide a Quitclaim Deed upon request of Helviks' counsel.

However, in the context of the already existing orders at the time of the contempt order, the "remedy" the District Court imposed in the contempt order imposes no sanction. First, contrary to Tuscanos' assertion, the District Court did not order Tuscanos to sell any specific personal or real property. The court found Tuscanos assertions regarding their financial situation not credible as Tuscanos provided no documentation to support their claims. Stating that Tuscanos may need to sell or encumber property to obtain the funds necessary to pay the mortgage is simply a statement of fact. Second, the court had already ordered Tuscanos to execute a quitclaim deed in its October 11, 2023 order. Finally, Helviks *already had* permission to sell the property by operation of the pre-existing orders—a fact which Tuscanos previously acknowledged.

Tuscanos filed their Notice of Appeal in this Court on November 7, 2023. As noted above, Tuscanos moved the District Court to stay its judgment pending the resolution of the appeal. In support of that motion, Tuscanos asserted in their reply brief, "if the execution is not stayed, Helviks will be the owners of the property and free to sell it . . . ."

9

After the District Court denied their motion to stay, Tuscanos moved this Court for relief from the District Court's denial. In support of their motion for relief, Tuscanos again asserted that, absent a stay, Helviks were free to "enforce the judgment immediately and sell the property."

Thus, Tuscanos clearly recognize that, regardless of the contempt order, Helviks are free to sell the property because the judgment is not stayed. The District Court's assertion that Helviks "may proceed with the sale of their real property that is the subject of the litigation," although couched as a "remedy" for Tuscanos' contemptuous conduct, is not in effect a sanction but is simply a recitation of the situation that already exists. Effectively, although the court found Tuscanos in contempt, it did not sanction them in any tangible way. It reiterated its October 11, 2023 order, requiring Tuscanos to obtain release of the mortgage and execute a quitclaim deed. It then reiterated—consistent with the orders denying Tuscanos a stay of execution of judgment during pendency of their appeal—that Helviks may sell the property. Since the court ordered no tangible sanctions, it did not exceed the sanctions authorized in § 3-1-520, MCA.

Having considered the petitions and responses filed, we decline to disturb the District Court's rulings in its July 7, 2024 Findings of Fact, Conclusions of Law, and Order Regarding Contempt.

IT IS THEREFORE ORDERED that this Petition for Writ of Supervisory Control and Writ of Review is DENIED and DISMISSED.

The Clerk is directed to provide immediate notice of this Order to Petitioner, to all counsel of record in DV-2021-39, and to the Honorable Brenda R. Gilbert, presiding District Judge.

DATED this 15 day of October, 2024.

_____
Chief Justice

10

_____

_____

_____

_____
Justices

11